IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PROGRESSIVE GULF INSURANCE COMPANY, INC., and
AMERICAN STRATEGIC INSURANCE CORP. PLAINTIFFS

v. CIVIL ACTION NO. 4:25-cv-003-SA-JMV

JAMES LINDSAY JR.,
B.M.B., a minor, by and through his
unknown parent, next friend or guardian;
VERONICA DENISE McDUFFY;
C.W.J., a minor, by and through his
unknown parent, next friend or guardian;
J.M.C., a minor, by and through his
unknown parent, next friend or guardian DEFENDANTS

ORDER AND MEMORANDUM OPINION

On January 9, 2025, Progressive Gulf Insurance Company, Inc. ("Progressive") and American Strategic Insurance Corp. ("ASI") initiated this lawsuit by filing their Complaint for Declaratory Relief and Judgment [1]. The Third Amended Complaint [92], which is the operative complaint, seeks an adjudication of liability coverage with respect to separate policies issued by Progressive and ASI to Defendant James Lindsay, Jr. ("Lindsay"). Before the Court is Progressive and ASI's joint Motion for Summary Judgment [71].[1] Through counsel, Lindsay and B.M.B. oppose the Motion [71]. The remaining defendants, who are unrepresented, have not responded to the Motion [71], and their time to do so has long passed. Having considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

[1] Pursuant to the Court's Order [91], Progressive and ASI filed their Third Amended Complaint [92] on July 6, 2026, after addressing a jurisdictional concern that the Court raised *sua sponte*. In that Order [91], the Court acknowledged that Progressive and ASI's Motion [71] was pending and, rather than denying the Motion [71] as moot upon their filing of an amended complaint, opted to still consider the Motion [71], which had been fully briefed at that time. As a result, the Motion [71] predates the filing date of the Third Amended Complaint [92] and precedes it on the docket. The Court additionally notes that the Defendants have not answered the Third Amended Complaint [92].

*Relevant Factual Background*

Lindsay is the owner of a used YamaBuggy ATV, which he purchased in April of 2024. On May 3, 2024, that YamaBuggy ATV was involved in a motor vehicle accident. *See* [76], Ex. 1 at p. 1. On the date of the collision, Lindsay had two insurance policies in effect—a Mississippi Auto Policy issued by Progressive and a Homeowners Protection Policy issued by ASI.

In November 2023, Progressive underwrote a Mississippi Auto Policy naming James Lindsay, Jr. and Joni L. Lindsay as insureds.[2] The auto policy bears number 963847792, and the Declarations Page lists two vehicles under the "outline of coverage," including a 2023 GMC Sierra Crew pickup and a 2012 Buick Enclave. [71], Ex. 3 at p. 2. The subject YamaBuggy ATV is not listed on the Declarations Page of the auto policy.

Separately, ASI issued a Homeowners Protection Policy bearing policy number MSA56964, which provides coverage for dwelling, personal property, and personal liability, among other coverages. The named insureds of that policy are also James and Joni Lindsay.

The May 3, 2024 collision involving Lindsay's YamaBuggy ATV occurred on a public road in Washington County, Mississippi. At the time of the collision, the YamaBuggy ATV was being driven by Defendant B.M.B., who is Lindsay's minor child. Defendants C.W.J. and J.M.C., both minors, were passengers in the YamaBuggy ATV. Also involved in the collision was a 2016 Chevrolet Equinox owned and operated by Defendant Veronica Denise McDuffy. According to the Third Amended Complaint [92], McDuffy, C.W.J., and J.M.C. "… allege to have suffered some measure of personal injury and/or property damage resulting from the collision between the YamaBuggy operated by B.M.B. and the Equinox operated by McDuffy." [92] at p. 3.

---

[2] Joni L. Lindsay is not a party to this lawsuit.

Subsequently, Progressive and ASI filed this declaratory judgment action against Lindsay and all persons involved in the May 3, 2024 collision. Progressive and ASI contend that "[n]either Lindsay, nor the operator of the YamaBuggy, B.M.B., had applied for or had in force on [May 3, 2024] a separate and distinct policy, providing collision, comprehensive, medical payment or liability coverage arising from the use of an owned ATV (All Terrain Vehicle), UTV (Utility Task Vehicle), Side-by-Side, Dune-Buggy or other off-road vehicle." *Id.* at p. 4. Thus, through the instant action, they seek a judgment declaring that the existing auto and homeowners protection policies afford no coverage for claims arising from the May 3, 2024 collision and that they are therefore under no obligation to defend or indemnify "…qualifying insureds, if any[.]" [92] at p. 8.

In their joint Motion for Summary Judgment [71], Progressive and ASI take the position that they are entitled to judgment as a matter of law because there are no factual disputes as to the lack of coverage under their respective insurance policies. Lindsay and B.M.B. oppose the Motion [71], and the remaining Defendants, McDuffy, C.W.J., and J.M.C., failed to submit a response.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

The Court recently reassured itself of jurisdiction over this case. *See* [91] at p. 1-3. It did so because "[a] claim under the Declaratory Judgment Act is insufficient to confer federal question jurisdiction under 28 U.S.C. § 1331." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019); *see also Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010) ("A declaratory judgment claim is not jurisdiction-conferring; there must be an independent basis for federal jurisdiction."). The Court need not restate those findings herein; however, it notes that Lindsay and B.M.B. raise justiciability concerns in their joint Response [76] related to "the unrepresented minors' claims[.]" [76] at p. 10. The Court will consider those arguments in addressing the availability of a declaratory judgment in this case as justiciability is encompassed

in that analysis. *See Blue Hill Specialty Ins. Co. v. Robertson*, 2025 WL 1638516, at *2 n.1 (S.D. Miss. June 9, 2025) (analyzing justiciability as an element of plaintiff's claim for declaratory relief).[3]

*I. General Availability of Declaratory Judgment*

"The Declaratory Judgment Act provides that 'in a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Blue Hill*, 2025 WL 1638516 at *3 (quoting 28 U.S.C. § 2201(a)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Id.* (quoting *Frye*, 953 F.3d at 294) (internal quotation marks omitted). "It must ask (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (quoting *Frye*, 953 F.3d at 294) (internal quotation marks omitted).

Lindsay and B.M.B.'s justiciability concerns relate to the first step. The Court will address it first before turning to the remaining steps. *See Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 164-65 (5th Cir. 2015) (quoting *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir.2001)) ("A district court abuses its discretion 'unless [it] addresses and

[3] Briefly, concerning personal jurisdiction, "[f]ederal courts may… always assume jurisdiction over a defendant in any action in which there is personal, in-state service of process." *Blue Hill*, 2025 WL 1638516 at *3. The Court notes that it previously raised concerns regarding whether Defendants C.W.J. and J.M.C. had been effectively served with process in denying Plaintiffs' Motions for Entry of Default [56, 57]. *See* [62] at p. 4. Since the entry of that Order [62], Plaintiffs perfected service on those minor defendants and their respective legal guardians. *See* [65, 66, 67, 68]. They also personally served each of the remaining defendants in Mississippi. *See* [8, 10, 12]. Accordingly, the Court finds that it has personal jurisdiction over all defendants in this action.

balances the purposes of the [Declaratory Judgment Act] and the factors relevant to the abstention doctrine on the record.'").

*A. Justiciability*

The first step's actual controversy requirement "refers to an Article III case or controversy." *Frye*, 953 F.3d at 294. "[The plaintiff] bears the burden of pleading facts demonstrating the existence of a justiciable controversy." *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)) (internal quotation marks omitted). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

Further, "[i]n determining whether a controversy exists in a case with diversity jurisdiction, state law, by defining the substantive rights of the parties, plays a large role in determining whether a case or controversy exists." *Cincinnati Specialty Underwriters Ins. Co. v. US Polyco, Inc.*, 2020 WL 2114820, at *2 (N.D. Tex. May 4, 2020) (collecting cases); *see also Blue Hill*, 2025 WL 1638516 at *3-4 (considering Mississippi law in justiciability analysis).

The central dispute between Progressive and ASI and their insured, Lindsay, is whether coverage exists under either of the insurance policies issued to Lindsay for damages claimed against him as a result of the May 3, 2024 collision involving his YamaBuggy ATV. The Third Amended Complaint [92] alleges that both Progressive and ASI have received correspondence on behalf of at least two defendants, McDuffy and J.M.C., asserting claims arising from the May 3,

2024 collision. *See* [92] at p. 5-6. Based on the dispute as to those claims with respect to coverage, the Court finds that a substantial controversy exists in this case. *See Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("The purpose of the Declaratory Judgment Act is to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued.") (internal quotation marks and citations omitted); *see also QBE Ins. Corp. v. McFarland*, 2011 WL 3625308, at *2 (S.D. Miss. Aug. 17, 2011) (holding that a declaratory judgment action was ripe where a notice of claim had been presented to an insurer); *Starr Indem. & Liab. Co. v. Mississippi Hous. & Dev. Co.*, 2015 WL 1486635, at *3 (S.D. Miss. Mar. 31, 2015) (same). It further finds that the instant controversy is ripe for adjudication as it is not based on hypothetical facts. *See Orix*, 212 F.3d at 895 (reversing the district court's finding that an "actual controversy" existed where controversy was "largely, if not purely, hypothetical."). The asserted claims arise from damages that have already accrued and allegedly resulted from the collision involving Lindsay's YamaBuggy ATV and the claimants. There is no question that, in disputing coverage, Progressive's and ASI's legal interests are adverse to that of their insured, Lindsay, and all parties involved in the collision.

Additionally, Mississippi law recognizes "the limited right of an insurer to seek a declaration of coverage where such coverage is in doubt[.]" *Mercer v. Moody*, 918 So. 2d 664, 667-68 (Miss. 2005). An insured may bring a declaratory action to resolve a coverage question "where the insurance company has indicated it may deny coverage of the claim." *Id.* On this point, the Third Amended Complaint [92] alleges that "Defendant Lindsay has expressly asserted that there is a genuine issue of fact regarding whether the dune buggy involved in the subject accident is covered under the subject [Progressive] auto policy." [92] at p. 5. Both Progressive and ASI deny that coverage is available as to the asserted claims based on the YamaBuggy ATV's

involvement in the subject collision. Threatened with liability, the Court finds that Progressive and ASI have the right to seek adjudication of the instant dispute. *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Declaratory judgments are typically sought before a completed 'injury-in-fact' has occurred but still must be limited to the resolution of an 'actual controversy.'") (internal citation omitted).

The Court turns to Lindsay and B.M.B.'s specific arguments in this regard. In their Response [76], Lindsay and B.M.B. "… do not contend that the Court lacks jurisdiction over the entire action. Rather, [they argue that] declaratory relief is improper at least as to the unrepresented minors' claims, and summary judgment must be denied, at the very least, to that extent." [76] at p. 10.[4] Specifically, they argue that the unrepresented minors have not yet asserted claims against Progressive or ASI and that this fact renders any coverage dispute contingent upon their assertion of claims. The Court disagrees.

First, the Court notes that, according to the Third Amended Complaint [92], one of the minor defendants, J.M.C., has provided notice of a claim to Progressive and ASI, thereby undercutting Lindsay and B.M.B.'s argument with respect to that defendant. As to C.W.J., Lindsay and B.M.B. are essentially asking this Court to exempt any claim made by C.W.J. in the future from being subject to this Court's ruling on the instant coverage dispute. They cite no authority in support of this proposition and the Court is therefore unpersuaded. Even if this Court's exercise of jurisdiction were contingent upon the assertion of claims by *all* defendants, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action…. Rather, courts should focus on the practical likelihood that the contingencies will occur." *Orix*, 212 F.3d at 895 (citing *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.

---

[4] The Court understands the "unrepresented minors" as being a reference to C.W.J. and J.M.C., the only minor defendants in this action who are not represented by counsel.

1992)). The Court finds it very likely that Progressive and ASI will face claims from C.W.J. as they have already been met with demands and claims from other defendants involved in the collision.

Notwithstanding, the Court necessarily reiterates that Progressive and ASI seek a determination of coverage in this case, which, pursuant to Mississippi law, involves the interpretation of their respective insurance policies. *See Sturkin v. Mississippi Ass'n of Supervisors, Inc.*, 315 So. 3d 521, 529 (Miss. Ct. App. 2020). In Mississippi, "[t]he interpretation of an insurance policy is a question of law, not one of fact." *Id.* Since interpreting the policies present only legal questions, the Court can make a determination of coverage now. *See Orix*, 212 F.3d at 895 ("A case is generally ripe if any remaining questions are purely legal ones[.]").

*B. Authority*

Next, the Court considers whether it has authority to grant declaratory relief. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003). "[A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act, 28 U.S.C. §] 2283." *Id.*

None of the litigants have made the Court aware of any parallel state court proceedings. Thus, the Court has authority to issue a declaratory judgment in this case. *Knight Specialty Ins. Co. v. Day Express LLC*, 2022 WL 5250281, at *3 (N.D. Tex. Oct. 5, 2022) (finding that "[N]one of the defendants sued [Plaintiff] in state court" and holding that it had authority to issue declaratory judgment in light of that fact).

*C. Abstention Doctrine*

Finally, the Court considers "whether to exercise its broad discretion to decide or dismiss [this] declaratory judgment action." *Frye*, 953 F.3d at 294 (quoting *Orix*, 212 F.3d at 895) (internal quotation marks omitted). The Fifth Circuit has identified the following seven nonexclusive factors for district courts to consider in addressing this inquiry:

> (1) whether there is a pending state action which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co.*, 343 F.3d at 388.

Having already determined that no competing state lawsuit involving the parties herein exists, the Court finds that the first and seventh factors weigh strongly in favor of the Court electing to decide this action. *See id.* at 394 ("The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action… [I]t is a factor that weighs strongly against dismissal.").

Next, the Court analyzes the second, third and fourth factors together as these factors concern the same issue: "whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Id.* at 391. The Fifth Circuit has made clear that "[d]eclaratory judgments are often 'anticipatory,' appropriately filed when there is an actual controversy that has resulted in or created a likelihood of litigation." *Id.* at 391-92. And "[t]he mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Id.* at 397. Here, there is no evidence in the record indicating that Progressive and ASI filed suit in this Court in order to gain access to a federal forum on improper or unfair grounds. Ultimately, the selection of the federal forum did not change the applicable law—there is no dispute that Mississippi law would apply to the coverage dispute between the parties regardless of whether the suit was brought in state or federal court. The Court is cognizant that three of the defendants are minors; however, the named insured, Lindsay, is not. There is no evidence that Lindsay is restricted from filing a state court action related to the coverage dispute "averting the possibility that [Progressive and ASI] engaged in a 'race to res judicata[.]'" *Id.* at 399. For these reasons, the Court finds that these factors weigh in favor of deciding this action rather than dismissal.

Finally, the remaining two factors—the fifth and sixth factors—consider efficiency. *See id.* at 400. As to the fifth factor, there is no evidence that a federal forum would be inconvenient for the defendants. All defendants in this case are residents of Washington County, Mississippi, which is located within the Northern District of Mississippi. Because the parties are diverse, if a lawsuit in state court was brought concerning the instant coverage dispute, that case would be removable to a federal forum. Regarding the sixth factor, the Court finds that retaining this lawsuit would

serve the purpose of judicial economy because it avoids multiplicity of lawsuits to resolve the instant coverage dispute. *See Knight Specialty Ins. Co.*, 2022 WL 5250281 at *3.[5]

In sum, the Court finds that the factors overwhelmingly favor the exercising of its discretion to decide this declaratory judgment action.

*II. Merits*

Turning to the merits of this action, in Mississippi, insurance policies "are contracts, and as such, they are to be enforced according to their provisions." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). Again, "[t]he interpretation of an insurance policy is a question of law, not one of fact." *Id.*

The law pertaining to interpretation and enforcement of insurance policies is well-established. The Mississippi Supreme Court has held that "[w]hen the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 743 (Miss. 2013) (internal quotation marks and citations omitted). "[I]f a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party." *Cont'l Cas. Co. v. Allstate Prop. & Cas. Ins. Co.*, 235 So. 3d 40, 50 (Miss. 2017) (internal quotation marks and citations omitted). Thus, in the context of insurance contracts, "[a]ny ambiguity is strictly construed against the insurer." *Parker v. United Servs. Auto. Ass'n*, 430 So. 3d 873, 876 (Miss. Ct.

[5] In their Response [76], Lindsay and B.M.B. passingly argue that the Court should exercise its discretion to dismiss this action because, according to them, Progressive's and ASI's requested relief "fall[s] outside the proper scope of declaratory relief at the summary judgment stage." [76] at p. 11. Specifically, Lindsay and B.M.B. take issue with any request to "(1) resolve disputed factual issues regarding vehicle classification, use and causation; and (2) declare coverage nonexistent for hypothetical future claims by minors." *Id.* at p. 11-12. The Court finds their argument misplaced as these points do not relate to the relevant abstention factors. As to their first point of concern, the Court will consider their argument when addressing the merits of this action. Regarding their second point of concern, the Court has already addressed it in its justiciability analysis.

App. 2026). "Ambiguities exist when a policy can be logically interpreted in two or more ways[.] However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy." *Allstate*, 235 So. 3d at 50 (internal quotation marks and citations omitted). Importantly, "this principle does not permit the creation of ambiguity where there is none." *Parker*, 430 So. 3d at 876 (internal quotation marks and citation omitted). "Thus, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Id.*

Progressive and ASI seek an adjudication of coverage with respect to separate policies issued to their insured, Lindsay. The Court will analyze the policies separately beginning with the Homeowners Protection Policy issued by ASI and then turning to the Mississippi Auto Policy issued by Progressive.

*A. ASI's Policy*

In their Response [76], Lindsay and B.M.B. concede that "the facts of the accident fall within the exclusion [provision] in [ASI's] policy[.]" [76] at p. 3. Nonetheless, because the Motion [71] is potentially dispositive and impacts the remaining defendants, the Court will nonetheless briefly consider whether ASI is entitled to summary judgment.

ASI's Homeowner Protection Policy provides liability coverage, including personal liability and medical payments coverage. *See* [71], Ex. 4 at p. 20. However, the policy contains an exclusion provision that provides as follows:

> We do not cover liability for "bodily injury" or "property damage" arising out of the:
>
> 1. Ownership, maintenance, occupancy, *operation*, use, loading or unloading of a "motor vehicle," "aircraft," or "watercraft;"
> 2. Entrustment of a "motor vehicle," "aircraft," or "watercraft" by an "insured" to any person[.]

*Id.* at p. 22.

For purposes of ASI's policy, "motor vehicle" is defined as:

1. A self-propelled land or amphibious vehicle; or
2. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in 1. above.

*Id.* at p. 29-30.

Excluded from the definition of "motor vehicle" are vehicles in dead storage on an "insured location," a motor vehicle not subject to motor vehicle registration that is used *solely* to service the residence premises, a vehicle "designed for recreational use off public roads and *not* owned by an 'insured,'" a motorized wheelchair, and a motorized golf cart subject to certain usage. *Id.* at p. 30 (emphasis added).

It is undisputed in this case that, at the time of the collision, Lindsay's YamaBuggy ATV was being operated by B.MB., a minor, on a public highway. Thus, if the YamaBuggy ATV meets the definition of a "motor vehicle" under the ASI policy, and it is not excepted from the exclusion provision, then the policy affords no coverage. There is no evidence in the record to support that any of the exceptions to the exclusion provision apply to Lindsay's YamaBuggy ATV; therefore, the decisive question becomes whether it is a "self-propelled land or amphibious vehicle." The Court finds that it is.

The Merriam-Webster dictionary defines "self-propelled" as "containing within itself the means for its own propulsion."[6] Progressive and ASI provided a photo of the subject YamaBuggy ATV in its post-accident condition, which shows that the ATV has an engine and therefore the means to propel itself. *See* [71], Ex. 1. Additionally, in his sworn declaration, Lindsay describes the YamaBuggy ATV as a "two-wheel drive" vehicle. [76], Ex. 1 at p. 1. Accordingly, the Court finds that Lindsay's YamaBuggy ATV is a self-propelled vehicle that falls within the description

[6] "Self-propelled." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/self-propelled. (last visited July 22, 2026).

of a "motor vehicle" as defined in the ASI policy. It is therefore excluded from the coverage afforded under that policy. Because the ASI policy provides no coverage for the YamaBuggy ATV, the Court finds that ASI has no corresponding duty to defend or indemnify Lindsay for any claims related to the ATV's involvement in the subject collision. *See Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006) ("[N]o duty to defend arises when a claim falls outside the policy's coverage."); *see also Seneca Ins. Co., Inc. v. RREAF Holdings LLC*, 568 F. Supp. 3d 659, 665 (S.D. Miss. 2021) (citing *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 345 n.1 (S.D. Miss. 2006) ("If there is no duty to defend… there can be no duty to indemnify.").

*B. Progressive's Auto Policy*

Finally, the Court turns to Progressive's auto policy. Progressive argues that its policy does not provide coverage for the accident involving Lindsay's YamaBuggy ATV. For their part, Lindsay and BMB argue that the policy does not unambiguously exclude coverage.

The auto policy provides coverage for bodily injury and property damage "for which an insured person becomes legally responsible because of an accident" followed by several exclusion provisions. [71], Ex. 2 at p. 6-8. Relevant to Progressive's Motion [71], it argues that the following provision forecloses coverage for the subject accident involving the YamaBuggy ATV:

> EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.
>
> Coverage under this Part I, including our duty to defend, will not apply to any insured person for:
>
> …
>
> 12. bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by you or furnished or

> available for your regular use, *other than a covered auto* for which this coverage has been purchased[.]

*Id.* at p. 8 (emphasis added).

The policy then provides a specific definition of a "covered auto" as: "[1] any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer; [2] any additional auto; [3] any replacement auto; or [4] a trailer owned by you." *Id.* at p. 4.

The parties agree that the YamaBuggy ATV is not listed on the outline of coverage located on the policy's declaration page. *See* [71], Ex. 3 at p. 2. However, Lindsay and B.M.B. argue that the YamaBuggy ATV qualifies as an "additional auto" as those terms are defined by the policy. Notably, the policy states that "[a]n additional auto will have the broadest coverage [Progressive] provide[s] for any auto shown on the declarations page." [71], Ex. 2 at p. 4.

In short, the parties' dispute surrounds a narrower issue: whether the YamaBuggy ATV is considered an "auto" under the policy. In its Memorandum [72], Progressive concedes that "[i]f coverage is to apply under [its] policy, the YamaBuggy must qualify definitionally as an 'Auto.'" [72] at p. 6.

Pursuant to the policy, the term "Auto" means:

> [A] land motor vehicle:
>
> a. of the private passenger, pickup body, or cargo van type;
> b. designed for operation principally upon public roads;
> c. with at least four wheels; and
> d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
>
> However, "auto" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

[71], Ex. 2 at p. 4.

Crucially, Progressive only contests whether the YamaBuggy ATV is "designed for operation principally upon public roads" and does not address the other requirements under the policy's "auto" definition. It argues that the YamaBuggy "was axiomatically not designed for operation principally upon public roads." [72] at p. 7. In support of this argument, Progressive relies on excerpts of a news article by "Newswire Today," which describes the design of a "YamaBuggy by XATV." [71], Ex. 6.[7] In its Reply [79], Progressive heavily relies on the information provided in the news article in arguing that the YamaBuggy was designed for off-road use and is therefore not covered under its policy. *See* [79] at p. 2-4.

Though Lindsay and B.M.B. do not raise the issue, the Fifth Circuit has held that "[n]ewspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." *James v. Texas Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles—classic, inadmissible hearsay"). By the same token, "[h]earsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence." *Dugas v. Ace Am. Ins. Co.*, 468 F. Supp. 3d 769, 772 (W.D. La. 2020) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)). "However, it is not dispositive whether the undisputed materials in their current form are admissible in evidence. At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being presented in a form that would be admissible in evidence." *Id.* (internal quotation marks and citations omitted). The question, then, is whether the information contained in the "Newswire Today" news article is

[7] Progressive's exhibit is not comprised of the news article itself. Rather, it provides what appears to be a separate Word document containing the information referenced in the news article, including the title of the article and the name of the news outlet. The Court has independently located the original article online.

capable of being presented in admissible form at trial (and thus can be considered here for summary judgment purposes).

"The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Carter v. H2R Rest. Holdings, LLC*, 2017 WL 3704688, at *5 (N.D. Tex. July 20, 2017), report and recommendation adopted, 2017 WL 3700908 (N.D. Tex. Aug. 25, 2017). In this regard, the Court notes that the subject news article fails to name an author and lists the following website as its source for information: http://www.yamabuggy.com/. *See* [71], Ex. 6 at p. 1. Notably, that website is no longer an active website, raising further questions regarding the reliability of the information contained in the news article. Further, the Court finds that no hearsay exception or exemption appears to apply to the substance of the article.

Absent any indication that a hearsay exception applies, which would reduce the substance of the article to an admissible form at trial, this Court "is left with the Fifth Circuit's pronouncement that [a] newspaper article[] [is] inadmissible hearsay." *Ellis v. Pinckley*, 2025 WL 284641, at *2 (W.D. La. Jan. 23, 2025) (citing *James*, 535 F.3d at 374; *Roberts*, 397 F.3d at 295). Thus, the Court cannot accept as true the information sourced from the "Newswire Today" news article pertaining to the YamaBuggy's design and therefore declines to consider it. *See Prather v. E. Baton Rouge Par. Sch. Bd.*, 2026 WL 361088, at *5 (M.D. La. Feb. 9, 2026) (declining to consider "facts offered by Plaintiff that [were] supported only by inadmissible news articles" in ruling on a summary judgment motion); *see also Williams v. Bexar Cnty.*, 2021 WL 148062, at *1 (W.D. Tex. Jan. 14, 2021) (same).[8]

[8] Despite the lack of objection on the part of Defendants as to admissibly of the "Newswire Today" news article relied upon by Progressive, the Court may properly exclude it *sua sponte*. *See Architectural Granite & Marble, LLC v. Pental*, 2024 WL 3683713, at *25 n.29 (N.D. Tex. Aug. 6, 2024) (citing *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012)) ("In ruling on a summary judgment motion, however, district

Reverting to the language of the policy, the definition of "auto" is clear—the design of the YamaBuggy ATV matters in determining whether it qualifies as an "auto" covered under the policy. Other than the information derived from the news article, Progressive relies on the fact that Lindsay's YamaBuggy was not registered and did not bear a license plate under Mississippi law. Although undisputed, in the Court's view, that fact does not conclusively establish whether Lindsay's YamaBuggy ATV was "designed for operation principally upon public roads."[9]

Ultimately, the Court finds that Progressive has not met its burden of proving, through competent summary judgment evidence, that its policy does not provide coverage for the subject YamaBuggy's involvement in the collision. *See Cincinnati Ins. Co. v. Wilson*, 331 So. 3d 14, 23 (Miss. Ct. App. 2021) ("[T]o benefit from an exclusionary provision in an insurance contract, *the insurer must show that the exclusion applies* and that it is not subject to any other reasonable interpretation that would afford coverage.") (emphasis in original). Progressive's request for summary judgment is therefore denied. *See Penson v. Lakeview Loan Servicing, LLC*, 2026 WL 692366, at *2 (N.D. Tex. Feb. 5, 2026), report and recommendation adopted, 2026 WL 691583 (N.D. Tex. Mar. 11, 2026) (quoting *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)) ("'Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.'").

courts may *sua sponte* exclude or decline to consider incompetent hearsay evidence even in the absence of an objection by the opposing party."); *see also Regions Bank v. Collier*, 2014 WL 4673263, at *4 n.4 (N.D. Miss. Sept. 18, 2014) (citing *Chapman v. Ensco Offshore Co.*, 463 Fed. App'x 276, 279–80 (5th Cir.2012)) ("A district court may *sua sponte* decline to consider hearsay evidence.").

[9] The photo of the subject YamaBuggy ATV, which is part of the record in this case, likewise does not conclusively establish that it was not "designed for operation principally upon public roads" as Progressive argues. It provides no insight into the manufacturer's design intentions.

*Conclusion*

For the reasons set forth herein, Progressive and ASI's Motion for Summary Judgment [71] is GRANTED IN PART AND DENIED IN PART.

IT IS HEREBY DECLARED that ASI's Homeowners Protection Policy No. MSA56964 does not provide coverage for Lindsay's YamaBuggy ATV's involvement in the subject May 3, 2024 collision. ASI therefore owes no corresponding duty to defend or indemnify any qualifying insured under that policy. The Clerk of Court is directed to terminate ASI as an active party on the docket in this case.

Progressive's requested relief is DENIED *without prejudice*. The Magistrate Judge will convene a status conference with the parties to address the appropriate manner to proceed in this litigation.

SO ORDERED, this the 9th day of September, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE